ANDERSON,
CYNTHIA ANN,
AND LORINDA,
(OF COLOR,)
vs.
CRAWFORD.

---

PET. EQ.         Anderson, Cynthia Ann, and Lorinda (of Color) *vs.* Crawford.

Case 38.               APPEAL FROM MONTGOMERY CIRCUIT.

1. Slaves cannot be emancipated in Kentucky except by writing.  The fact that an owner of a slave permitted her to go at large for near twenty years did not give freedom.

2. Where a slave by the consent of its owner becomes subject to the laws of a State, where slavery is not tolerated, the right to freedom grows out of the law of such State, not of the State where the owner may reside.

ANDERSON, CYNTHIA ANN AND LORINDA, (OF COLOR,) *vs.* CRAWFORD.

The facts of the case are fully set out in the opinion of the court.

*Jas. Harlan*, for appellants—

It is contended that the facts in this case show that the appellants are free, and that the decree of the Circuit Court is erroneous.

1. The appellee acquiesced in Milly's right to freedom for near twenty years, and permitted her to go at large and act as a free woman, and if he ever had right of property in her, abandoned it, and is now estopped to assert property in her children.

Slaves may become free by other means than by deed and last will and testament.

2. The court will indulge the presumption that Crawford gave to Milly some paper evidencing her right to freedom. Such a presumption ought to be indulged after a lapse of eighteen or twenty years without any assertion of ownership. In *Parsons on Contracts, page* 329, it is said : "When a slave, with a knowledge of his owner, has gone at large, and acted as if free for any considerable length of time, a jury may be directed to presume that a deed of manumission was executed with all the required formalities; and if it would be invalid unless recorded within a certain time, that it was so recorded."

This principle is recognized in the case of *Burk vs. Negro Joe*, 6 *Gill & Johnson*, 136 ; also, *Fenwick vs. Chapman*, 9 *Peters*, 461 ; *Aleck vs. Tevis*, 4 *Dana*, 246.

3. The facts in the case clearly destroy the force of the answer of Crawford, denying his knowledge of the residence of Milly in an adjoining county. His wife knew it, and he could not have been ignorant of it. We insist on a reversal of the case.

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR.)
vs.
CRAWFORD.

*Apperson & Mitchell, and K. Farrow,* on the same side—

1. The sole question presented by the proof in the case is, whether the lapse of time, more than twenty years, fortified as it is by circumstances most convincingly persuasive of the truth of the fact, will not authorize the court to presume that a deed of emancipation was duly executed, emancipating Milly, the mother of complainants.

If Milly was free, the complainants are free. Slaves can only be emancipated by deed in some form, or by last will and testament. So, real estate can only pass by will or deed, yet possession and lapse of time will give an indefeasible right to land. This court, in the case of *Smart vs. Baugh,* 3 *J. J. Marshall,* 368, and in others, has said that five years' possession bars the remedy and destroys the right of an original owner of a slave, unless the effect of the lapse of time can be obviated by some saving disability. Then why, in this case, should not the lapse of four times five years authorize the presumption of a deed of emancipation. We know of no case in which this question has been directly decided, and are compelled to rest it upon general principles. This court, however, has, in the case of *Gentry vs. McGinnis,* 3 *Dana,* 383, said that lapse of time, alone, will not authorize the presumption that one held in bondage is a slave ; because bondage is a continual trespass, unless by authority, and one so held occupies the attitude of an infant or *feme covert.* We contend that where the person held in bondage asserts right to freedom, and abandons the claimant, that limitation should begin to run, and that after the lapse of twenty years, or perhaps a much shorter period, the execution of a deed of manumission should be presumed. Some lapse of time ought surely to authorize this presumption. It is *necessary* to guard the rights of the free colored population of the State ; a class which, it is admitted, are generally worthless, yet the law professes to guard their rights.

In the case of *Beard vs. Smith*, 6 *Monroe*, 491–2, this court said : "That limitation is intended to guard against ancient claims, whether well or ill-founded in their origin, and to secure against the machinations of dishonesty, when attempted under the advantages attendant upon the lapse of time, of the loss of papers, and death of witnesses." This rule applies to this case, and the facts developed by the evidence strongly call for the practical application of the rule. Indeed, apart from the presumption arising from the lapse of time, a "presumption which holds the place of particular and individual belief," the facts that Ray was the father of Milly—that he exacted a promise of Crawford to free her at the age of eighteen years—that she was permitted to go free at that age —that Crawford frequently spoke of his promise to Ray—and soon after she left, said he would go where she was and give her her freedom—that, when lodged in jail as a runaway, he directed her release, and enclosed her forty dollars—that she was the sister of his wife, and the aunt of his children—all strongly conduce to prove the execution of a deed in fact. And when he abandons all claim for twenty years, knowing where the woman could be found, and making no effort to secure the possession, the presumption is fully sustained.

2. We call the attention of the court to the exclusion of the testimony of the neighborhood rumor of Milly's being a free woman. We think it admissible. If such was the fact, and it was known to Crawford, which is clearly to be inferred, her claim would be strengthened. If she was not free, he was notified that she claimed freedom, and it conduces to show that it was known to him where she was, and that he might have reclaimed her if she was not free.

Crawford should be estopped, by his own acts, from asserting title to the complainants. We call the attention of the court to the nature of an estoppel. It does not pass title, but only estops the assertion of title, and it is not necessary to assert title

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR,)
*vs.*
CRAWFORD.

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR,)
vs.
CRAWFORD.

by the other party. It is generally contrary to the truth. In this case, though, the complainants is complainant, yet Crawford is actor; he claims and asserts title in himself. The *onus* is on him, and as to his title this estoppel operates to preclude him from setting it up, because public policy, upon which this estoppel is based, forbids it. The negroes, by permission, claimed and exercised freedom for many years. They are bound out as free persons, and those to whom they are bound have acquired an interest in them and their services. Are not their rights to be protected? It was by the conduct of Crawford in neglecting to assert his right, that the County Court and those to whom they were bound out, acted in the premises. Shall they be disturbed?

The court, in this case, is called on to say how long the enjoyment of liberty should conclude the owner's claim. It should be settled by analogy; and what shall be the rule? Not twenty years, which is the rule in regard to land. Liberty is a personal right, and remedies to recover the right to personalty should guide the remedy. Should not five years be the period within which the right should be asserted?

Time should operate to afford a presumption of right to freedom. The lapse of time, coupled with other facts in this case, should authorize the presumption of right to freedom. Lapse of twenty years authorizes the presumption of payment of a bond, &c. Why should not the enjoyment of freedom for less than twenty years, in connection with the declarations of the one party that the other is free, be conclusive of the right. But the acts of the party speak louder than his words. The law favors liberty. The case ought to be reversed, and appellants declared free.

*W. C. Chiles*, for appellee—

It is most conclusively shown by the proof in the case, that Milly, the mother of the appellants, was a slave, and did in fact belong to appellee. She was

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR,)
vs.
CRAWFORD.

originally the property of Benjamin Ray. Ray died in 1819, after having first made and published his last will and testament, by which he devised the slave Milly, and other slaves, to Susan Crawford, his daughter, who was then, and still is the wife of Valentine Crawford, the appellee, who, immediately after the death of Ray, took said slave Milly into his possession, and retained her until about the year 1829 or 1830, when she ran away, or was stolen from him, as the testimony conduces to prove. All three of the appellants were born after this period.

1. The proof does not show that Crawford ever has seen Milly from the time she left him until this time. He knew nothing of the birth of the children until less than one year before these suits were brought. He had heard vague rumors on the subject, but knew nothing. Receiving correct information, he commenced the look-out, and found the three appellants in Montgomery county, some twenty-five miles from his place of residence, where he found them bound out as apprentices to three different men—Jones, Kirk, and Poynter—to whom they had been indented by the Montgomery County Court, acting under the supposition that they were free persons.

The proof shows that Crawford always asserted ownership in the negro girl Milly, and absolutely refused to sell his chance of recovering her, to every one who applied to him to purchase, still claiming the right to her and her children, if any she had.

It is true that Crawford was negligent in looking after his property and reclaiming it, but this is not surprising when the character of the appellee as developed by the testimony is considered. It may seem remarkable that Milly should have remained so long at a point so near to appellee without his knowledge, yet it is proved that the fact was unknown to his two sons equally with himself, as they testify.

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR,)
*vs.*
CRAWFORD.

2. It being clearly established that Milly was a slave, it follows that her children are slaves under the well established maxim: *partus sequitur ventrem.* The fact that the County Court of Montgomery took cognizance of the children of Milly, and treated them as free, can have no effect in the case; nor can the fact that Milly claimed to be free, when no shadow of right appears; nor can the escape of Milly to a free State give a right to freedom. In the case of *McFarland vs. McKnight,* 6 *B. Monroe,* 504, it is said: "being so slaves, and in possession of their owners in Kentucky, not emancipated, but unlawfully absconding and escaping from the service and employment of their owners, they remained the lawful property of their owners within whatever State or place, within the United States, they should be found, after their escape from the service of their owners."

Crawford denies, and it is not proved, that he had any knowledge of the proceedings of the Montgomery County Court, in binding out the appellants.

The only grounds upon which right to freedom is asserted for appellants is that their mother claimed to be free, and the lapse of time which intervened before the assertion of right by appellee.

The law upon the subject of emancipation of slaves is too well settled in Kentucky to be now called in question. It is said in *Hardin's Reports,* page 52, in the case of *Bell vs. Joe (of color,) Major vs. Winn's adm'r.* 13 *B. Monroe,* 250 : that "there is no law of this State by which slaves can obtain their freedom or enjoy the right of free persons, only by deed in writing, or the last will and testament of the owner, duly authenticated and enrolled."

It is not alleged in the pleadings that Milly or the complainants were ever emancipated in either of the modes recognized by the case cited. No such deed or writing, last will or testament, is produced and relied upon, nor is it pretended that any such ever was made or executed; nor does the proof conduce to

show that there ever was any emancipation in any form.

The effort to prove that Crawford said he intended to free Milly, or that she was to be free at a certain age, &c., are entitled to but little consideration. They do not, taken in their strongest sense, amount to an emancipation of Milly or complainants. Even a promise made to emancipate her could not be enforced. But such is not the case relied on in the pleadings. No contract to emancipate is set up. In the case of *Gatliff vs. Rose*, 8 *B. Monroe*, 633, this court said: "the mere design or intention of the parties that Rose was to be free at a given age, would not affect her liberation; nor could she render it available; nor could she obtain any benefit from any agreement, parol or written, between Lauderdale and Gill that the latter was to emancipate her at a certain age. Lauderdale might enforce such an agreement. Rose could not." (See also *Willis vs. Bruce*, 8 *B. Monroe*, 550.)

3. Lapse of time is relied upon to defeat the right of Crawford. This cannot avail. The lapse of time cannot prejudice the right of the owner to re-capture his runaway slave according to the settled law of the case. There is no ground upon which there can arise a presumption that any deed of emancipation was ever executed by Crawford.

An affirmance is asked of the court.

Chief Justice MARSHALL delivered the opinion of the Court—

Anderson and two others, children of Milly, who formerly belonged to B. Ray, and was, by him, devised to his daughter, Mrs. Crawford, filed their separate bills against Crawford, claiming that they were free, and born free. This claim, of course, depends upon the alleged freedom of their mother at the time of their respective births. But Milly was certainly the slave of Ray until his death, about the year 1819,

ANDERSON, CYNTHIA ANN AND LORINDA, (OF COLOR,) vs. CRAWFORD.

January 17.

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR,)
vs.
CRAWFORD.

when under his will, she passed into the possession of Crawford, and, by operation of law, became his property. She remained in his possession as a slave, until about 1828, '9, or '30, when she left with her husband, a free man of color, she being then about 18 years of age. There is some intimation in the evidence, that Milly was Ray's child, that he had intended to emancipate her by his will, but the provision to that effect was accidentally omitted. He lived, however, for many months after the execution of his will, and no such provision was added to, or is contained in it. Some of the witnesses also state that Crawford had promised Ray that he would free Milly, or at least that he acknowledged himself to be under some obligation to emancipate her, and avowed his intention to do so, when she should arrive at the age of 18 or 21 years, there being some uncertainty to which period he referred. It seems to be certain, however, that no deed or other instrument for the emancipation of Milly had been executed by Crawford before she left his possession, as above stated. And the only evidence relied on to prove that any writing was ever executed by him for that purpose, consists of the presumption contended for as arising from the fact that from the time when Milly left his possession as above stated, Crawford made no effort to reclaim her or her children, for a period of nearly or quite 20 years, during a great part of which, she was in the adjoining county to that of his residence, and at about 25 miles distant, passing and recognized as a free woman, until she left her first husband, and went off to a free State, as is supposed with another free man of color, and that having been arrested in this adventure, and put in jail, in one of the counties bordering on the Ohio, Crawford, when informed of the fact by a letter from the jailer, remitted to him $40 to pay fees, and told him to let Milly go, and she has not been heard of since. Within a few years after she left Crawford's possession, and before her second flight, Milly had four

children, all of whom she left behind, and of whom three are claiming their freedom, in the bills contained in this record. These children were bound out as free persons by the court of the county in which they had been born, and remained in service under the indentures, until they were claimed by Crawford, as his slaves, a short time before these suits were brought, in 1848.

<div align="right"></div>

Crawford alleges that when Milly left his possession, she either ran away or was stolen off by her husband; that he supposed she had gone to a free State; that he never knew where she resided, nor heard of her after she left his possession; and that he had not known or heard of her having any children, until informed of it shortly before he took measures to reclaim them; that he never emancipated Milly or her children, nor executed any writing for that purpose, nor in any manner renounced or abandoned his right of property in them, but that they were and are his slaves. Several witnesses prove that when Milly left Crawford, it was said and understood that she had run away. Several prove that Crawford continued to assert claim to her; and two of his sons who resided near him, say they never heard where Milly was, nor that she had any children until recently. Others of the neighbors knew these facts; some state that Crawford knew where Milly was. And one states that he saw her after she had the four children above referred to; that she then claimed her freedom under the will of of Ray, her former owner, and that upon being informed of her mistake, she said she was too white to serve as a slave, and asked the witness to get her free papers from Mr. Crawford. This claim of freedom under Ray's will, made, as is proved, when she first left Crawford's possession, had induced her new neighbors to suppose she was free, and to treat her as a free woman.

It has already been stated that the will of Ray contained no clause of emancipation. It in fact.

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR,)
*vs.*
CRAWFORD.

gave Milly to Mrs. Crawford, without any injunction or any expression indicating that she should be or was to be emancipated. The claim of *Milly* under that will, and her request to the witness as above stated, tend to show, what in point of fact we suppose to be true, that she had not received any writing of emancipation from Crawford. And the information that she was not free by Ray's will, may have induced her second flight to a place where her freedom might be more secure than in the vicinity of Crawford. And her impression that she was freed by Ray's will, may have been derived from the information that she was to have been so freed, or that Ray had imposed some obligation on Crawford, or taken his promise that he would emancipate her. The fact that she had been permitted to remain so long in the enjoyment of actual freedom without disturbance, or search, or even inquiry, on the part of Crawford, might well confirm her impression as to her right. But it does not, under the circumstances which have been stated, prove that he had ever executed any writing, by which it could be established. On the contrary, the circumstances referred *to*, disprove the existence or execution of any such writing, and are deemed sufficient to repel the presumption of such a fact, if, in view of the law and policy of our State, with respect to emancipation, any could arise from mere lapse of time, and actual exercise of the outward privileges pertaining to the condition of freedom.

It is true, the conduct of Crawford, who, if he did not know, might easily have known, where Milly was to be found, was not only inconsistent with the rights and ordinary motives and interest and inclinations of the owner of a slave, but was also inconsistent with the mandates of the law, and at war with his legal duty and his social *obligations*. But if this may prove that he intended Milly to be free, and that he was under obligations to emancipate her, it does not prove that he did ever perform those acts

1. Slaves cannot be emancipated in Kentucky except by writing. The fact that an owner permitted her slave to go at large for near twenty years did not give freedom.

which, in point of law, were necessary to her actual and legal emancipation.　On the contrary, it proves only that he was content with the actual condition of things, that his conscience and sense of obligation were satisfied by allowing Milly to go where she pleased, and act as she pleased, and to pass as a free woman, without restraint or control; and he may have thought that she was thereby emancipated. ＼ Or, if he supposed, as he says he did, that she went to a free State, he may have been content to let her thus enjoy, under the laws of that State, the freedom which he had intended, or felt bound to secure to her by his own act of emancipation.　And in this way the fact, if true, that he told the jailer, who had her in custody, when on her way to a free State, to let her go, may be accounted for.　But so long as she remained in Kentucky, his intention or even obligation to emancipate her, or his opinion that by his allowing her to act as a free woman, she had become legally free, did not and could not, in fact, make her free, because our laws admit of emancipation by writing only.　And it cannot be admitted that the illegal act of allowing a slave to act as a freeman, gives of itself a title to freedom, since this would be an utter subversion of the laws and policy of the State which impose restraints upon emancipation, and of the objects and policy of that law which prohibits the permission of slaves to act as freemen. Whether the continued permission so to act for any length of time, should authorize the presumption of a written act of emancipation, we need not decide, because, in this case, the circumstances disprove any such presumption of fact.

And we only add upon this subject, that when it has been decided that a slave becomes free by being voluntarily subjected, by his owner, to the laws of a State in which slavery is prohibited, the effect is attributed to the laws of that State, and not to our laws, which, although they do not allow emancipation by mere intention or act of the will, without a

ANDERSON,
CYNTHIA ANN
AND LORINDA,
(OF COLOR,)
vs.
CRAWFORD.

2. When a slave, by the consent of its owner becomes subject to the laws of a State, where slavery is not tolerated, the right to freedom grows out of the law of

</div>

written act, do not authorize the enslaving here of any one who was actually and legally free. Under this principle, Milly may have become free, if, being allowed to act as a free woman, and to go where she pleased, she went to a free State, for the purpose of acquiring or enjoying freedom, and especially, if she went to reside there, with the consent or even knowledge of her owner. But if she thus acquired her freedom, it was after her children, now complaining, were born; and as they remained in Kentucky, they can have no claim to freedom on account of her thus becoming free. Nor can they derive any right from the fact that a County Court, supposing them to be free, took the control of them, as being free, and bound them out by indentures. It does not appear that Crawford participated in or had any knowledge of these acts, or even knew that Milly had children, or that they were left in Kentucky. And, although his laches, or even his illegal act, may have contributed to the mistake of the County Court, or have produced it, that did not make the children free, or destroy his title to them, or estop him from asserting it.

Wherefore, the decree is affirmed.